# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CR-14-347-D |
| RICHARD M. ARNOLD, SR., a/k/a Rick Arnold, RICHARD M. ARNOLD II, a/k/a Ricky Arnold, ROBERT W. ARNOLD, and ROBYN R. ARNOLD, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## **O R D E R**

On March 24, 2015, the Court conducted a *James*[1] hearing to determine the admissibility of certain out-of-court statements to be offered by the government at trial as alleged coconspirator statements under Fed. R. Evid. 801(d)(2)(E). This hearing was prompted by the motions of Defendant Robyn R. Arnold [Doc. No. 54] and Defendant Robert W. Arnold [Doc. No. 58]. In advance of the hearing, the government filed a Notice of Intent to Offer Co-Conspirator Hearsay [Doc. No. 63] summarizing the statements to be offered at trial.

At the *James* hearing, the government offered evidence (Exhibits 1-39), which the Court admitted for the limited purpose of the hearing. The government also offered the testimony of Agent Elizabeth Fulbright, an agent with the Oklahoma Attorney General's office who investigated the alleged crimes at issue along with the Federal Bureau of Investigation.

---

[1] *United States v. James*, 590 F.2d 575 (5th Cir. 1979); *see also United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

The statements at issue are ones made by the alleged participants in the conspiracy charged in Count I of the Indictment, that is, a conspiracy to commit wire fraud in connection with a vehicle-purchase / financing scheme, in violation of 18 U.S.C. § 1349. The alleged conspirators in Count I are each of the four Defendants in this action. The conspiracy is alleged to have occurred during the time period May 2013 through April 2014.

As alleged, the conspiracy involved Defendants Richard Arnold, Sr. (Rick Arnold), Richard M. Arnold, II (Ricky Arnold) and Robert W. Arnold assisting individuals in purchasing vehicles.[2] Defendants would help the individuals complete the financing paperwork and falsely represent that the individuals' monthly income included trust fund payments from the CECU Trust (the Trust) managed by Defendant Robyn Arnold. As part of the scheme, Defendants required the individuals to obtain financing well above the purchase price of the vehicles. Upon approval of the financing for the vehicles and the receipt of funds in excess of the vehicle's purchase price, the individuals would then remit payment of those funds to the Trust. Defendants represented to the individuals that, in return, the vehicles would be paid for in full by the Trust. In some instances, the Trust made a minimum number of payments but then failed to make further payments. No vehicles were paid in full. In fact, no payments were made on any vehicles after April 2014. In all, approximately 30 vehicles were purchased through this scheme and Defendants indirectly procured financing in the sum of approximately 1.3 million dollars. Defendants received in total approximately $200,000 dollars in cash as a result of the scheme.

Defendant Robyn Arnold is the sole signatory on the two bank accounts opened in the name of the Trust. The evidence at the *James* hearing did not establish that she solicited any customers

---

[2]Defendant Ricky Arnold entered a plea on March 24, 2015, prior to the *James* hearing.

or participated in any vehicle purchases. Instead, she participated in the conspiracy through her management of the Trust's bank accounts which held funds obtained through the alleged conspiracy. Payments on the vehicles purchased as part of the wire fraud scheme were made from these accounts.

In its Notice, the government identifies communications that Defendants Rick Arnold, Ricky Arnold and Robert Arnold had with certain individuals who purchased vehicles through the alleged conspiratorial scheme. The government identifies the following witnesses whose testimony will relate coconspirator statements of both Rick Arnold and Ricky Arnold to be admitted against Defendants under Rule 801(d)(2)(E): C.M.B. and R.B.; B.B. and A.B.;T.R.F. and L.F.; and G.M. and J.M.

The government identifies H.H.S. and J.P.H. as witnesses whose testimony will relate coconspirator statements of Robert Arnold and Rick Arnold to be admitted against Defendants. In addition, the government identifies J.W. and B.W. as witnesses whose testimony will relate coconspirator statements of Ricky Arnold to be admitted against Defendants.

At the hearing, Agent Fulbright testified about each of the individuals above, how they came into contact with Defendants and that through Defendants, the individuals purchased one or more vehicles, over-financed the vehicle(s) and gave the "cash back" funds they received in excess of the purchase price to Defendants who then deposited the funds into the Trust's bank accounts.

The government identifies the following text messages, introduced at the hearing, that relate conspirator statements to be admitted against Defendants under rule 801(d)(2)(E):

- text messages between Ricky Arnold and

    1) M.B. (Exhibit 23);

3

2) B.B. (Exhibit 25);

3) G.M. (Exhibit 27);

4) B.W. (Exhibit 34); and

- text messages between Robert Arnold and

1) J.P.H. (Exhibit 28).

In addition, the government identifies the following emails, introduced at the hearing, that relate conspirator statements to be admitted against Defendants under rule 801(d)(2)(E):

- emails between Rick Arnold and

1) C.M.B. (Exhibit 22);

2) B.B. (Exhibit 26); and

3) J.H. (Exhibits 30, 31, and 32)

- emails between Ricky Arnold and

1) B.W. (Exhibits 33, 35, and 36);

2) K.R. (Exhibit 38); and

3) T.F. (Exhibit 39).

Finally, the government identifies a form contract introduced at the hearing and entitled "Membership Agreement United Auto Buyers Co-op Association" (Exhibit 32 ). Agent Fulbright testified that Defendants tried to get individuals to sign this agreement as a condition of the purchase of a vehicle. The agreement purports to restrict the legal rights of any individual signing it and references terms and conditions of membership that include referring business to increase sales. The testimony and evidence at the hearing showed that one of the individuals, J.H., signed the contract as part of his arrangement with the Trust to purchase a vehicle on his behalf. *See* Exhibit 32.

To show the admissibility of statements under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence that 1) a conspiracy existed; 2) the declarant and the defendant were both members of the conspiracy; and 3) the statements at issue were made in the course of, and in furtherance of, the conspiracy. *United States v. Hall*, 473 F.3d 1295, 1302 -1303 (10th Cir. 2007) (*citing United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir.1997)); *Owens*, 70 F.3d at 1123.

As to the third element, "[s]tatements by a conspirator are in furtherance of the conspiracy when they are intended to 'promote the conspiratorial objectives.'" *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (*quoting United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)). "Such promotion occurs through statements that explain events of importance to the conspiracy in order to facilitate its operation, statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, and statements of a coconspirator identifying a fellow coconspirator." *Id.* (internal quotations and citations omitted).

Based on the testimony of Agent Fulbright and the evidence received at the hearing, the Court finds the government has established, by a preponderance of the evidence, that the conspiracy described in Count I of the Indictment existed. The declarants, Rick Arnold, Ricky Arnold and Robert Arnold were all members of the conspiracy. Considering the substance of the statements, and evidence presented at the hearing regarding the vehicle purchase transactions at issue, the Court finds the statements identified in the government's Notice and at the hearing, including the emails, texts and other documents, were made in the course of or in furtherance of the conspiracy. Through these statements, Rick Arnold, Ricky Arnold and Robert Arnold solicited one or more individuals

5

to participate in the vehicle purchase scheme; assisted in procuring financing; falsified financial applications; received funds from the individuals as a result of the financing; facilitated the deposit of those funds into the Trust bank accounts, misrepresented to individuals that the Trust would pay for the vehicles; misrepresented to individuals that payments on the vehicles had been made or would be made; failed to make payments as required by the vehicle purchase agreements; and pressured individuals to make "referrals" to sustain the scheme.

In addition, Robyn Arnold opened the Trust bank accounts and was the sole signatory on those accounts.[3] The bank records introduced at the hearing (Exhibits 10-16) reflect deposits made to the Trust accounts from the vehicle purchase transactions. The bank records show Robyn Arnold, as trustee of the Trust, endorsed at least one check from a car dealership for deposit into the Trust's bank account. The bank records further show payments made on the vehicles through the Trust accounts. An email exchange between Robyn Arnold and T.G. introduced at the hearing (Exhibit 37), shows that Robyn Arnold was aware that her husband, Rick Arnold, had assisted at least one individual in purchasing a vehicle "through the [T]rust." *Id*.

Accordingly, the Court finds that the out-of-court statements that the government intends to introduce at trial, including the text messages, email exchanges and documents identified in the Notice and offered at the *James* hearing are admissible against Defendants under Rule 801(d)(2)(E).

---

[3]Evidence at the hearing (Exhibits 1-8) showed that Rick Arnold has a prior felony conviction for tax fraud and in the course of those criminal proceedings, was found to be malingering as to a claim of mental incompetency. The evidence further showed Robyn Arnold was aware of his claim of mental incompetency in the course of the criminal proceedings. The Court expresses no opinion on the admissibility of such evidence at trial. For purposes of the *James* hearing, however, the evidence supports the government's preponderance-of-the-evidence showing that Robyn Arnold is a member of the conspiracy charged, had knowledge of the conspiratorial scheme and engaged in conduct in furtherance of the conspiracy.

IT IS SO ORDERED this 25th day of March, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE